## Graham H. Harris et al. v. Peter Kill.

1. BOARD OF EDUCATION—*What Powers it Possesses.*—The board of education of Chicago, like all municipal bodies, has only such powers as are expressly given to it, or as result by fair implication from the powers granted.

2. CONSTITUTIONAL LAW—*Article 8, Section 1, of the Constitution,*

*is Not Self-executing.*—Article 8, section 1, of the State Constitution is not self-executing, but the legislature must, either by general or specific grant, carry it into effect.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Affirmed. Opinion filed June 17, 1903.

HERRICK, ALLEN, BOYESEN & MARTIN, DANIEL J. Mc-MAHON, and ALBERT B. FORCE, attorneys for appellants.

EDDY, HALEY & MUNROE, and MICHAEL F. GIRTEN, attorneys for appellee.

The first section of article eight of the Illinois Constitution is not self-executing. Cooley's Constitutional Limitations, page 99; Washingtonian Home v. Chicago, 157 Ill. 414; Phillips v. Quick, 63 Ill. 445; Hills v. City of Chicago, 60 Ill. 86.

Where an enumeration of particular things, persons, cases, etc., is followed by general words or phrases, such words or phrases are, in general, regarded as referring to things, etc., of the kind or class of those specified. Wilson v. Sanitary District, 133 Ill. 443; Misch v. Russell, 136 Ill. 22; Ambler v. Whipple, 139 Ill. 311; County of Union v. Ussery et al., 147 Ill. 204; Webber v. Chicago, 148 Ill. 313; Cairo v. Coleman, 53 Ill. App. 680.

MR. JUSTICE BURKE delivered the opinion of the court.

The Circuit Court entered an order perpetually enjoining the board of education of Chicago and its officers from purchasing or distributing school-books or text books for the free use of the pupils of the first four grades of the elementary schools of the city of Chicago, except such text books as may be supplied to children of indigent parents and whose parents are not able to buy them.

The bill in chancery was filed in this case by appellee, a citizen and taxpayer of the city of Chicago, on behalf of himself and all other taxpayers similarly situated, against certain officers of the board of education and other parties officially connected with the board.

Answers thereto were filed and issue joined, whereby was raised the question of the power of the board to purchase or distribute school books or text books for the free use of all pupils of the first four grades of the elementary schools, except such text books as may be supplied to the children of parents not able to buy them.

It is alleged in the bill that for a number of years last past the board of education has furnished free text books to all children attending the public schools of Chicago whose parents were too poor to purchase them, and the board has appropriated money from the available school funds for the purchase of such books; and further alleged that a very large part of the money for school purposes is derived by direct taxation assessed and levied on the taxable property of the residents and property owners in Chicago; and further alleged that on February 20, 1901, the board appropriated to be paid out of the funds available for school purposes for 1901, $91,069.12 with which to purchase free text books for use in the public schools for 1901, and also $8,930.88 to pay the deficiency for 1900, making a total appropriation out of the available school funds for 1901 of $100,000.

It is further alleged in the bill that on June 12, 1901, the following resolution was adopted by the board :

" Resolved : That this board deems it advisable for the best interests of the taxpayers of this city, and in order to secure to all children in this city a good common school education, that free text books be, and they are hereby, adopted for the first four grades of the elementary schools, beginning with the school year 1901-2; and be it further Resolved, that the superintendent be, and he is hereby directed to report within thirty days to the school management committee proper rules and regulations for the purchase of the necessary text books for the free use of the pupils of the said four grades, and their distribution and use by all pupils enrolled in these grades at the beginning of the fall term of 1901."

It appears that the superintendent reported as directed by the above resolution, and that on September 4, 1901, the board, by a majority vote, adopted a resolution direct-

ing the superintendent to purchase school books as contemplated in the resolution to the amount of $46,660.

Complainant further alleged that the superintendent was about to execute said direction of the board by purchasing the books and expending the sum of money mentioned out of the resources of the schools of Chicago under the charge, control and management of the board, "said books to be distributed by said superintendent without reference to whether the parents of said children so attending the lower grades of said schools are financially able, at their own cost, to supply their children with necessary school books."

The truth of the foregoing allegations is admitted by the defendants, save that they state that the foregoing resolutions were preceded by the reasons assigned for such measure. It was found in the final decree that the said action of the board of education in directing the purchase and distribution of said free text books was and is wholly without authority of law and is void.

The question for determination on this appeal is: Has the board of education legal authority to purchase or distribute text books for the free use of all the pupils of the first four grades of the city schools, without reference to whether the parents of said children are financially able at their own cost to supply their children with necessary books.

Article 8, section 1, of the Constitution of 1870, is as follows:

"The General Assembly shall provide a thorough and efficient system of free schools, whereby all the children of this state may receive a good common school education."

Pursuant to this provision of the constitution, the state legislature enacted the school laws of 1872 and 1889. By these laws the school districts were divided according to population, those having a population of less than 1,000 inhabitants, those having a population of not more than 100,000 inhabitants and those having a population exceeding 100,000 inhabitants.

The board of education, like all municipal bodies, has only such powers as are expressly given to it, or as result by fair implication from the powers granted. Glidden v. Hopkins, 47 Ill. 529.

Under the statute the powers of the board are:

(1) To furnish schools with the necessary fixtures, furniture and apparatus.

(2) To maintain schools and supply funds for salaries from school taxes.

(3) To hire buildings for the use of the board.

(4) To hire buildings for the use of schools.

(5) To employ teachers.

(6) To prescribe the school books and the studies in the different schools.

(7) To divide the city into school districts and "generally to have and possess all the rights, powers, and authority required for the proper management of schools, and with powers to enact such ordinance as may be deemed necessary and expedient for such purpose."

(8) To expel any student guilty of misconduct.

(9) To remove any teacher whenever not qualified to teach or for any cause the interests of the school may require such removal.

(10) To apportion the scholars to the several schools.

(11) To lease school property and to loan moneys beonging to the school fund; and further various duties are required of the board.

It will be seen that no specific grant of power to furnish text-books for the free use of all scholars can be found in this enumeration of powers. It is contended by counsel for appellants that a specific grant is unnecessary, provided there is a general grant of power to a municipal body sufficiently broad to cover the particular act or from which the power to do the act may be implied, and in such case that particular act will be held valid under the general grant.

We do not understand that the grant of powers to counties or other municipal corporations must contain a specification of each particular act to be done, but it is enough if the words used are sufficiently comprehensive to cover the proposed acts. An express authority may be general as well as particular. Aqua Pura v. Mayor, 60 Pac. Rep. 208.

Nowhere among the powers of the board can a specific
grant of power to furnish free school books be found. If
the power exists it must be found under the general grant
of power in the seventh item of powers, or it must arise by
implication from the body of powers granted and the evi-
dent purposes it had in view by the legislature in passing
said statutes.

It is said that the board of education has for some years
supplied school books for indigent pupils and purchased
libraries, and that the exercise of this power has thus far
gone unchallenged, although no specific provision authoriz-
ing the purchase of such books exists. The question of the
power to purchase school books for the children of parents
too poor to buy them is eliminated from this case by the
form of the injunctional order; hence the former acts of
the board can give no guidance in the case before us further
than to indicate the construction placed upon the statutes
by the board itself. The case of supplying text books to the
children of parents too poor to buy them differs, if not in
principle, certainly in reason and degree radically from the
case of furnishing text books free to the children of wealthy
parents. The constitution provides that all the children of
the state may receive a good common school education. It
may be said that the behests of the constitution can not be
complied with if the children of the very poor are not sup-
plied with free text books. The same thing could not be
said if the children of the wealthy were not supplied with
free school books.

Counsel for appellants insist that the powers and author-
ity required for the proper management of schools are
placed with the board and that, of necessity, the judgment
of the board must be accepted in determining what acts are
necessary and expedient for the proper management of
schools; that the board has found that they can not carry
out the constitutional command to provide a thorough and
efficient system of free schools without supplying free text
books to all pupils.

It must, however, be said that the constitution is not self-

Harris v. Kill.

executing and that the legislature must, either by general or specific grant, give the power to the board to purchase with public school funds, text books for the wealthy, before we can hold that the board has such power.

With much force counsel urge the same legislature has been exceedingly careful to grant the power to purchase libraries and supply books to the children of the poor in certain districts and that it is unreasonable to say that the legislature would deliberately withhold the same power from a municipal body charged with the duty of providing a thorough and efficient system of free schools for portions of a great city where poverty is almost universal. It must be responded, however, that the wisdom and propriety of granting power to the board of education to furnish free text books for all are not for this court to determine. The legislature has enumerated with much detail the various powers and duties of the board of education and has specifically provided for many matters, such as dismissing a pupil for gross disobedience or removing a teacher for cause, which might perhaps safely have been left to be covered by the seventh item of powers, which gives all powers required for the proper management of schools.

It is a general rule that an attempted enumeration will limit the general terms. It is admitted by appellants that so rapid has been the growth of the city of Chicago that the board of education has not had money to erect school houses sufficient in number to accommodate children of the city. It is claimed, however, that the board has rented rooms temporarily to accommodate all children.

It is a serious question whether scores of thousands of dollars should be appropriated to purchase school books for the children of parents abundantly able to furnish their own children with books where there is so pressing need for the expenditure of money in other directions for equipping the public schools of Chicago.

Upon an examination of the school laws applicable to the various classes of the districts it is found that the legislature has most carefully limited the powers of directors

and boards in certain directions and we do not think that the power of the board in this case to purchase books for free general distribution can by any fair implication be recognized.

In justification of the resolution of the board to furnish free text books to rich and poor alike, it is urged that such action secures increased and longer attendance of pupils. Other inducements attendant with more or less expense to the public, such as transportation to and from the home of the child, would doubtless result in larger attendance, but the offering of such inducements could not find warrant among the itemized powers and duties of the board.

To place firm restrictions about the expenditure of public moneys often, in particular cases, contravenes a cherished desire and thwarts a philanthropic purpose, but experience teaches that the conservative course more efficiently promotes public interests. The authority and power to expend public moneys set apart for school purposes should be clearly restricted. As was said in School Directors v. Fogleman, 76 Ill. 191 :

" These bodies can exercise no other powers than expressly granted or such as may be necessary to carry into effect a granted power. Glidden v. Hopkins, *supra.* And it is fortunate for the people this power is so restricted."

The authority of the board must not be extended nor its powers enlarged, either by intendment or by any strained construction of the statute.

We have considered the compulsory education laws of this state, but are unable to find therein any expression which by intendment or fair implication can be construed as giving the board authority to make free distribution of school books to all pupils of the first four elementary grades.

It is apparent that there is a marked distinction between purchasing books for a library, having its home in the school building, and from purchasing school books for the individual, exclusive and free use of all pupils. The library would be for the use of all the pupils much as the black-

boards or maps or charts hanging on the walls of the school rooms. No well-defined policy with reference to furnishing free text books to all pupils can be found in this state, at least of so pronounced a character that we would be justified in engrafting it upon the school laws of the state. With great industry counsel for appellants have gathered the authorities and compiled all references to statutes, and have argued therefrom that the public policy of the state and a reasonable inference as to the intention of the legislature drawn from these various statutes, are that under the general powers conferred upon the board of education under the seventh section of its list of powers, full authority was given it to distribute school books for free use. But without extending this opinion with a review of the arguments of counsel, we are of the opinion that the powers granted for general management of schools do not authorize the board to distribute school books for the free use of all pupils. Such power to expend school moneys in ways new and untried in this state should first be clearly granted by the legislature and not assumed by the zeal of boards of education or by the construction of courts.

We are of the opinion, therefore, that the decree of the Circuit Court should be affirmed.